IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 9, 2007

**STATE OF TENNESSEE v. RICK BRADEN**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-02051     James C. Beasley, Jr., Judge**

_____

**No. W2006-00377-CCA-R3-CD  - Filed May 18, 2007**

_____

The defendant, Rick Braden, was convicted by a Shelby County jury of two counts of aggravated robbery, and he received concurrent nine-year sentences. On appeal, he argues that (1) the trial court erred in not allowing him to introduce the guilty pleas of two named co-defendants, (2) the evidence is insufficient to sustain his convictions, and (3) the trial court erred in failing to instruct the jury on the lesser-included offense of facilitation. Following our review of the record and the parties' briefs, we conclude that the trial court erred in failing to charge the lesser-included offense of facilitation, and therefore, reverse the judgments of the trial court and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed and Remanded**

J.C. MᶜLɪɴ, J., delivered the opinion of the court, in which Nᴏʀᴍᴀ McGᴇᴇ Oɢʟᴇ, J., joined and Dᴀᴠɪᴅ G. Hᴀʏᴇs, J., filed a separate concurring opinion.

Lauren Pasley-Ward, Memphis, Tennessee, for the appellant, Rick Braden.

Michael E. Moore, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Paul Hagerman and Valarie Smith, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**
**I.  PROCEDURAL AND FACTUAL BACKGROUND**

In March 2005, the defendant and three co-defendants were indicted on two counts of aggravated robbery. The defendant's case was severed from his co-defendants and a jury trial commenced on November 30, 2005. At trial, Amie Burgess testified that on September 27, 2004, she went to the Mid-South Fair and then to a restaurant, Mélange, in the Cooper-Young area of Midtown Memphis. Ms. Burgess and a friend, Samantha Birdsong, left the restaurant and got in Ms. Burgess' car where they were approached on the driver's side by a tall black male who asked how they were doing. As the man was speaking to them, a car pulled up behind her car and blocked her

from leaving. Ms. Burgess then noticed someone run up to the passenger side of the car and grab Ms. Birdsong's purse. Ms. Birdsong yelled, jumped out of the car, and chased after the purse-snatcher. As Ms. Burgess was watching Ms. Birdsong, another black male reached into the driver's side window and tried to grab her purse. Ms. Burgess struggled with the man, but he eventually got the purse away from her. The man then reached into the car and grabbed the keys out of the ignition. Ms. Burgess reached for her spare keys that were under the seat and the man also tried to grab those keys, but Ms. Burgess struggled and he let go of the keys. Ms. Burgess recalled hearing two gunshots at some point during the altercation. She said that the gunshots came from somewhere behind her.

On cross-examination, Ms. Burgess stated that she and Ms. Birdsong left Mélange sometime around 11:30 p.m. She explained that they went to her car to wait on another friend, Michelle, and had sat in the car for three or four minutes before they were approached. Ms. Burgess said that she could not identify any of the individuals involved in the robberies. Ms. Burgess explained that she heard the first gunshot after Ms. Birdsong had gotten out of the car and chased the purse-snatcher. Ms. Burgess clarified that she heard a noise that sounded like a firecracker while she was struggling for her purse, and then heard the noise a second time at which time she figured out it was a gunshot. When she heard the second shot, Ms. Burgess noticed that Ms. Birdsong fell to the ground outside the passenger's door, but she did not see anyone shooting.

Samantha Birdsong testified that on the evening of September 27, 2004, she met some friends at Mélange, and when it was time to leave, walked with Ms. Burgess to her car. She and Ms. Burgess were sitting in the car with the windows down "gossiping" when a tall black male approached Ms. Burgess' window and "asked what [they] were doing and if [they] were having a good time." Ms. Birdsong recalled that a black female then approached the passenger side window, reached in, and grabbed her purse. Ms. Birdsong got out of the car and chased after the woman. The woman ran and got into a car that was parked behind Ms. Burgess' car, blocking the car in a "T" fashion. Ms. Birdsong saw that there were two other people in the car in addition to the purse-snatcher. There was a heavy, black man in the backseat and another man in the driver's seat, neither of whom were the same man who initially approached Ms. Burgess' car.

Ms. Birdsong testified that she reached through the open back window of the car after the purse-snatcher, and the two got into an altercation over the purse. While they were scuffling, Ms. Birdsong heard a gunshot behind her and to the right. After the first gunshot, the woman stuck a gun in Ms. Birdsong's face, and Ms. Birdsong walked backward toward Ms. Burgess' car at which point she was shot at two times. She got into Ms. Burgess' car and when the other car took off, she got out and tried to get its license plate number.

On cross-examination, Ms. Birdsong testified that she was able to identify the woman who stole her purse, but she could not identify any of the other individuals involved in the robbery. Ms. Birdsong recalled that the car the robbers were in looked like an older, four-door Buick. Ms. Birdsong said that she was sure the first noise she heard was a gunshot because she was raised

around guns. Ms. Birdsong said she noticed that the man who initially approached Ms. Burgess' car was standing behind her and to the right as she ran after the purse-snatcher.

On re-direct examination, Ms. Birdsong stated that when the first gunshot was fired, the man who had originally approached the car was the only person in the parking lot. Ms. Birdsong admitted that she was only able to identify the woman from the photographic arrays she was shown, but in the courtroom she was able to point out the defendant as the person who initially approached them.

Randall Jackson testified that he has known the defendant since childhood. On the night of September 27, 2004, he received a call from a number he did not recognize so he did not answer the phone. Mr. Jackson called the number back, and Adrian Isabell, "Black," answered the phone and then handed it to the defendant. The defendant told Mr. Jackson that "he had just came off a mission." Mr. Jackson said that he did not know what the defendant meant exactly, but he figured that because the defendant was with "Black" they had probably robbed someone. From his conversation with the defendant, Mr. Jackson believed that the cell phone was stolen during the "mission." On cross-examination, Mr. Jackson said that he did not know for sure whether the defendant had robbed someone; he just knew that "Black" was known for robbing people and the defendant was with "Black."

Steven Williams testified that he was charged with the aggravated robberies of Amie Burgess and Samantha Birdsong and was currently incarcerated. On September 27, 2004, Mr. Williams was riding around in a gray Buick Century with Adrian Isabell. The defendant and Shaneka Brownlee, "Mimi," were also in the car. On that evening, Mr. Isabell, the defendant, and Mimi picked Mr. Williams up and they went joy-riding in the area of the MidSouth Fair. Mr. Williams testified that they were drinking alcohol and looking for marijuana.

Mr. Williams testified that later that night, Mr. Isabell pulled his car up behind two ladies sitting in a car in the Cooper-Young area. The ladies had their car windows down, and the defendant and Mimi got out and went to talk to them. A few minutes later, Mr. Williams saw the defendant and Mimi running back to the car with purses. A lady was chasing Mimi, Mimi got in the car, and the lady and Mimi fought over the purse. Mimi then pulled a gun and put it in the lady's face, and Mr. Williams heard shots.

Mr. Williams said that he thought Mimi had shot the lady, but then he noticed that no "fire" had came from Mimi's gun. When Mr. Williams looked toward the ladies' car, he saw the defendant standing behind the lady with fire coming out of his gun. Mr. Williams said that he was sitting in the backseat of the car the entire time. Mr. Williams noted that Mr. Isabell got out of the car at some point and went toward the ladies' car. After shooting at the lady, the defendant walked toward Mr. Isabell's car, raised his gun in the air, and shot. Mr. Williams said he did not know the defendant had a gun until he saw him shoot it. After the defendant fired the shots, he jumped in the car, Mimi closed the door, and they left the scene. As they were driving, the victim's cell phone began to ring, and Mimi and the defendant would both answer it and say things like, "How you going to get us. You don't even know me." Mr. Williams could tell the caller was the victim. Mr. Isabell eventually

got the cell phone and "busted" it in the street. Mr. Williams said that he thought the defendant received $80 or $100 from the robbery proceeds. On cross-examination, Mr. Williams testified that he thought the defendant and Mimi might have approached the ladies to see if they had marijuana. Mr. Williams stated that he saw Mr. Isabell walk about halfway to the ladies' car, but never saw him go all the way to it.

Sergeant Matt Whittington of the Memphis Police Department testified that upon finding out a cell phone had been stolen during the robbery he put a trace on the phone and recovered some phone calls that were made shortly after the robbery. Sergeant Whittington said that over the course of his investigation he developed the defendant as a suspect. The defendant was brought in for questioning on September 30, 2004, during which he gave a statement admitting to being part of the robberies of Ms. Burgess and Ms. Birdsong. In his statement, the defendant said,

> I was at my house at 1724 Norfolk and Adrian [Isabell] and Mimi picked me up in Adrian's Buick Century. We went to pick up Steve at his house on Mallory, and Adrian said that we were going to the fair to see if we can run across some money down there.
>
> We started to ride around the fairgrounds looking for some money. Adrian and I saw some white girls and Adrian parked behind the car behind their car blocking them in. Adrian told me get out of the car, and I went to the girl's car to talk to them.
>
> While I was talking to them, Mimi ran up on the passenger side of the car and reached through the window to get the purse. The girls got out of their car fought and chased Mimi back to Adrian's car.
>
> Adrian got out[,] went to the girl's car and reached through the driver's window and got the purse. Adrian went to the girl's car and took the keys out of the car. Adrian ran back to his car and the girls fought with Adrian.
>
> Steve fired a shot in the air and the girls went back to their car. Adrian got into his car and we all left. We went towards my house on Norfolk and Mimi and Adrian were going through the girl's purses.
>
> Mimi counted the money and we all got $25 each. By now I used the girl's red cell phone and called Randy Jackson on his cell phone at No. 628-5399. Randy didn't answer the phone. Randy called me back about one minute later. I told him that I was heading to the house.
>
> Mimi answered the girl's red cell phone and spoke for a second with someone. Adrian threw the phone out at Gaither and Margery in the middle of the

street. Adrian dropped me off at Randy's house and I talked with him for a minute. Adrian then dropped me off at my house.

The defendant told Sergeant Whittington that he participated in the robberies because he needed money. Sergeant Whittington stated that the defendant was the tallest of the four individuals involved in the robberies.

The defendant did not testify at trial or offer any evidence. Following the conclusion of the proof, the jury returned a verdict of guilty to both counts of aggravated robbery. A sentencing hearing was held, and the defendant was sentenced to nine years on each conviction to be served concurrently.

## II. ANALYSIS

The defendant raises three issues on appeal. He argues that (1) the trial court erred in not allowing him to introduce the guilty pleas of two named co-defendants, (2) the evidence is insufficient to sustain his convictions, and (3)the trial court erred in failing to instruct the jury on the lesser-included offense of facilitation.

### Co-defendants' Guilty Pleas

The defendant first argues that the trial court erred in not allowing him to introduce the guilty pleas of Adrian Isabell and Shaneka Brownlee, two of his co-defendants, at trial. Prior to trial, the state made a motion in limine to preclude the defendant from calling the clerk of the court to testify that both Mr. Isabell and Ms. Brownlee pled guilty to aggravated robbery. The trial court agreed, ruling that such evidence was not relevant to any issue at the defendant's trial. On appeal, the defendant asserts that such evidence was relevant because it "lends credence to the notion that this other male was the person who exited the vehicle and likely fired the gun into the air," which would have allowed him to argue that he was only guilty of facilitation.

When viewing a claim regarding the trial court's exclusion of evidence on the grounds of irrelevance, this court will not disturb the decision of the trial court absent an abuse of discretion. *See State v. Dubose*, 953 S.W.2d 649, 652 (Tenn. 1997). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Even relevant evidence, however, may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id.* 403.

Upon review, we conclude that the trial court did not abuse its discretion in excluding testimony regarding the co-defendants' pleas on the basis of irrelevance. All the evidence presented

at trial indicated that four individuals were criminally responsible for the robberies.[1] The defendant initiated the robberies by approaching the women and engaging them in conversation, both women's purses were snatched, and at some point gunfire ensued. While there were some discrepancies regarding the specific actions of the various perpetrators, that two of the co-defendants chose to pled guilty rather than go to trial does not have any bearing on any fact pertaining to the defendant's guilt or innocence. In addition, the trial court could have precluded evidence of the co-defendants' pleas based on the likelihood that such evidence would confuse the issues and potentially mislead the jury. *See id.* The trial court did not abuse its discretion.

## Sufficiency

The defendant challenges the sufficiency of the convicting evidence. We begin our review by reiterating the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); *see* Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *Rice*, 184 S.W.3d at 662. Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

"Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). The offense becomes aggravated robbery when it is accomplished with a deadly weapon or by displaying an article which is used to cause the victim to reasonably believe it is a deadly weapon. *Id.* § 39-13-402(a)(1). Again, a person is criminally responsible for the conduct of another if, "[a]cting with intent to

---

[1] "A person is criminally responsible as a party to an offense if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." Tenn. Code Ann. § 39-11-401(a). One is criminally responsible for an offense committed by another when, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." *Id.* § 39-11-402(2).

promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" *Id.* § 39-11-402(2).

The evidence at trial showed that the defendant approached Ms. Burgess' car and started a conversation with Ms. Burgess and Ms. Birdsong. While the defendant was talking to the women, Ms. Brownlee ran up to the women's car and grabbed Ms. Birdsong's purse which held money and a cell phone. Ms. Birdsong chased Ms. Brownlee, during which, either the defendant or another perpetrator grabbed Ms. Burgess' purse and car keys. At some point during the altercation, two or three gunshots were fired. The four perpetrators left the scene and divided up the proceeds from the robberies. Randall Jackson testified that the defendant called him from the stolen cell phone and said that he had been "on a mission," which Mr. Jackson interpreted as a robbery. Steven Williams, a co-defendant, testified that the defendant was involved in the robbery, and the defendant and Ms. Brownlee were the ones who grabbed the purses from the two women. Mr. Williams also testified that when he heard gunshots he looked toward the victims' car and saw the defendant firing a gun. Further proof showed that the defendant gave a statement to Sergeant Whittington wherein he admitted that he and three other people participated in the robberies. The defendant admitted that they stole two purses, car keys, a cell phone, and cash. He told Sergeant Whittington that he received twenty-five dollars from the proceeds, and that he participated because he needed money. We note that the jury assessed the credibility of the witnesses and resolved all conflicts in their testimony. In the light most favorable to the state, the evidence was sufficient to find the defendant guilty of two counts of aggravated robbery.

## Facilitation Instruction

The defendant lastly argues that the trial court erred in failing to instruct the jury on facilitation as a lesser-included offense of aggravated robbery. Specifically, the defendant asserts that the state's proof was riddled with inconsistencies, particularly in regard to whether he fired a weapon and whether he was the one who snatched Ms. Burgess' purse. The record reflects that the defendant requested that the trial court instruct the jury on facilitation. The trial court denied the defendant's request, stating:

> I have a question about facilitation. The law on criminal responsibility has been that if the charge of criminal responsibility is charged and frankly if there are co-defendants, that facilitation of a felony should be charged but also part of the Burns test is that could a reasonable jury in reviewing the facts of the case find based upon those facts the offense of facilitation and is there a valid basis for that and could that conviction stand based on the proof if a jury were to return a verdict of that.
>
> I have a question in my mind frankly about the crime of facilitation in this particular case. Even though I think criminal responsibility should be charged based on the proof that I've heard, I do not see how a jury could reasonably find the crime of facilitation. Facilitation specifically requires, "That the defendant knew that

-7-

another person intended to commit the specific felony of . . .", in this case ". . . aggravated robbery, but did not have the intent to promote or assist the commission of the offense or to benefit in the proceeds or results of the offense, and that the defendant furnished substantial assistance to that person in the commission of the felony."

Well, the proof that we have before us is that [the defendant] not only knew that it was going to happen but participated in the happening, received proceeds from it happening, gave a reason why he participated that he needed money, and then there's been testimony, notwithstanding his statement, but there's been testimony [from] other witnesses that he possessed a gun, that he fired the gun. I just do not see how a reasonable jury under those circumstances and those facts could find the crime of facilitation, namely, that [the defendant] knew something was going to happen, but he didn't really -- had no intent to assist or promote the commission of the offense.

Based on the proof that's been presented, I don't think a jury could find that based on the law as I understand it to be, and to I -- I at this point don't intend to charge facilitation unless you can tell me some good reason why I should.

According to *State v. Burns*, 6 S.W.3d 453 (Tenn. 1999), an offense is considered lesser-included of a greater offense if:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

(1) a different mental state indicating a lesser kind of culpability; and/or

(2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

*Id.* at 466-67. Whether instruction on a lesser-included offense should be given hinges upon whether the trial court, viewing the evidence most favorably to the existence of the lesser-included offense, concludes that (1) evidence exists that reasonable minds could accept the lesser-included offense, and (2) that the evidence "is legally sufficient to support a conviction for the lesser-included offense." *Id.* at 469. The failure to instruct the jury on lesser-included offenses requires a reversal unless the reviewing court determines that the error was harmless beyond a reasonable doubt. *See State v. Ely*, 48 S.W.3d 710, 727 (Tenn. 2001). Upon review, this court must determine "(1) whether an offense is a lesser-included offense; (2) whether the evidence supports a lesser-included offense instruction; and (3) whether an instructional error is harmless." *State v. Allen*, 69 S.W.3d 181, 187 (Tenn. 2002). The standard for an appellate court's review of the trial court's charge to the jury regarding lesser-included offenses is de novo with no presumption of correctness. *State v. Moore*, 77 S.W.3d 132, 134 (Tenn. 2002).

Part (c)(1) of the Burns test clearly designates facilitation a lesser-included offense of the charged offense. *Burns*, 6 S.W.3d at 467. Thus, facilitation is a lesser-included offense of aggravated robbery. Having determined that facilitation is a lesser-included offense, we must next determine whether the evidence in this case warranted an instruction on facilitation.

Tennessee Code Annotated section 39-11-403(a) provides that "[a] person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Criminal responsibility requires " the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense." *Id.* § 39-11-402(2). Notably, facilitation requires the lack of criminal responsibility intent.

In the light most favorable to the defendant, we conclude that evidence exists that reasonable minds could accept as to the lesser-included offense of facilitation, and the evidence was legally sufficient to support a conviction for facilitation of aggravated robbery. In his statement to the police, the defendant admitted to talking to the women but said that his cohorts were responsible for grabbing the purses and firing a gun. At trial, the witnesses provided inconsistent testimony as to the defendant's actual involvement. Indeed there was some evidence presented that the defendant's intent in initially approaching the women might have been to look for marijuana. Sergeant Whittington testified that the defendant said that he participated in the robberies because he needed money; however, the jury could have chosen not to believe all or part of the defendant's statement. Viewing the evidence liberally in favor of the existence of the lesser-included offense, we conclude that a jury could have found that the defendant's actions were those of a facilitator. Thus, it was error for the trial court to not provide an instruction on facilitation.

-9-

Our next inquiry is to determine whether the error in failing to charge facilitation was harmless beyond a reasonable doubt: that is, whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial. *Allen*, 69 S.W.3d at 191. In making this determination, this court must "conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." *Id.* at 191. The jury was instructed on several lesser-included offenses and criminal responsibility for the conduct of another; however, we have no way of knowing whether the jury concluded that the defendant was a principal actor or criminally responsibility for the actions of his cohorts. If the jury was convinced by the proof that an aggravated robbery indeed occurred, then it would either have to convict the defendant of aggravated robbery or acquit him entirely. The jury was given no option to convict the defendant as a participant who acted on behalf of his cohorts, but who did not intend to assist in actually robbing the victims. While we have previously determined that the proof is sufficient to support the defendant's aggravated robbery convictions, the proof in this case could also support the defendant's theory that he was a facilitator in the robberies. We simply cannot hold beyond a reasonable doubt that the jury would not have convicted the defendant of facilitation on one or both of the aggravated robbery charges had it been given that option. Therefore, we cannot conclude that the error was harmless, and accordingly, we reverse the judgments of the trial court.

### III.  CONCLUSION

Based on the foregoing, we reverse the judgments of the Shelby County Criminal Court and remand for a new trial.

_____
J.C. McLIN, JUDGE